**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Guadalupe MENDEZ–CASILLAS,
Defendant–Appellant.**

**No. 99–30266.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2000

Filed Dec. 6, 2001

*Honda,* 386 U.S. at 486, 87 S.Ct. 1188.

Glen A. Prior, Fife, Washington, for the defendant-appellant.

James P. Connelly, United States Attorney, Earl A. Hicks, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Before: B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER, District Judge.[1]

BETTY B. FLETCHER, Circuit Judge:

Jose Mendez–Casillas, a citizen of Mexico, stands convicted of having illegally reentered the United States following deportation, pursuant to 8 U.S.C. § 1326. He appeals his conviction on the ground that a clerical error rendered the warrant accompanying his prior deportation defective. Mendez Casillas therefore contends that he was never previously arrested or deported, as required for the government to prove a § 1326 offense. We reject these arguments and affirm his conviction.

I.

In January 1992, Mendez–Casillas, acting under the alias of Jesus Ramirez–Salinas, was arrested and convicted of two counts of delivering cocaine in Olympia, Washington. After the completion of a 36–month sentence, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Mendez–Casillas. An Immigration Judge ("IJ") found him deportable based on his prior drug convictions. Mendez–Casillas waived his right to appeal the IJ's ruling, resulting in his deportation from the country on February 12, 1994.

Significantly, although Mendez–Casillas was sent back to Mexico, his warrant of deportation was unsigned by the INS district director.[2] He then reentered the U.S. illegally on February 18, 1994.[3] He

---

1. The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

2. The relevant federal regulation, 8 C.F.R. § 241.32 (formerly 8 C.F.R. § 243.2), states that "[a] Form I–205, Warrant of Deportation, based upon the final administrative or-

der of deportation in the alien's case shall be issued by a district director."

3. The defense and the government stipulated at trial that Mendez–Casillas reentered the country sometime between February 12, 1994, and September 30, 1996. Given the nature of Mendez–Casillas's legal claims, the precise date of his reentry is unimportant;

was located by the INS in the county jail in Yakima, Washington, on July 23, 1998, and charged with violating 8 U.S.C. § 1326. After being advised of his rights, Mendez–Casillas admitted his status as a Mexican national, his prior deportation and conviction for delivery of cocaine, and his unauthorized reentry into the country. He also admitted to his use of an alias. A fingerprint analysis confirmed that Mendez–Casillas and Ramirez–Salinas are in fact the same person.

At his bench trial, Mendez–Casillas moved for acquittal under Fed.R.Crim.P. 29, claiming that as a result of the unsigned warrant of deportation, the government could not prove that he had been legitimately "arrested" under the pre-IIRIRA version of § 1326 that was in effect at the time of his reentry into the country. In addition, he argued that the government could not prove that he had been validly "deported" due to the defective warrant. ·

The district court held that as a matter of law, a violation of § 1326 constitutes a continuing offense, and that Mendez–Casillas was therefore guilty of the crime in 1998 when he was apprehended. Applying the 1998 (IIRIRA-amended) version of § 1326,[4] the court thus found that the government was required to prove only the following four elements to sustain a conviction for illegal reentry: (1) that the defendant was an alien; (2) that he was previously deported from the U.S.; (3) that he re-entered the country without permission;

and (4) that he was found in the jurisdiction of the Eastern District of Washington in 1998.

Mendez–Casillas stipulated to the first, third, and fourth elements. As to the second element, the district court found that Mendez–Casillas was in state custody when a federal detainer was put on him, and that he was then released from state custody and granted a deportation hearing prior to being transported back to Mexico. The court held that "even though [the] documentation may not have been executed perfectly," the procedure was not so flawed as to deny Mendez–Casillas constitutionally adequate judicial review, and therefore constituted a valid deportation. The district court thus found that the elements of the crime had all been met, and that Mendez–Casillas was therefore guilty of a § 1326 violation. He now appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.

■■■ The district court's conclusions of law are reviewed de novo. *United States v. Fitzgerald,* 147 F.3d 1101, 1102 (9th Cir.1998); *United States v. Gomez–Rodriguez,* 96 F.3d 1262, 1264 (9th Cir.1996) (en banc). The district court's denial of Mendez–Casillas's Rule 29 motion for acquittal is also reviewed de novo. *United States v. Yossunthorn,* 167 F.3d 1267, 1270 (9th Cir. 1999). In this respect, our review is conducted in the same manner as a challenge

---

rather, what is significant is that the government concedes that Mendez–Casillas reentered the U.S. prior to the enactment date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–618 (codified at 28 U.S.C.A. § 1326 (West 1999)) ("IIRIRA").

4. 8 U.S.C. § 1326(a) (1999) reads as follows: Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or who has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both.

to the sufficiency of the evidence. *United States v. Allen,* 88 F.3d 765, 768 (9th Cir. 1996). Thus, viewing the evidence in the light most favorable to the government, we must determine whether any rational trier of fact could have found, beyond a reasonable doubt, the requisite elements of the offense charged. *Id.*

### III.

Mendez–Casillas argues that the pre-IIRIRA version of § 1326 should apply to his case, given that both parties stipulated at trial that he illegally reentered the U.S. prior to the enactment date of IIRIRA. The pre-IIRIRA version of § 1326(a) required a defendant to have been previously "arrested and deported" in order to be found guilty of the crime of illegal reentry after deportation.[5] We have previously endorsed the view that "arrested"[6] and "deported" constitute two distinct elements of a pre-IIRIRA § 1326 offense. *See United States v. Bahena–Cardenas,* 70 F.3d 1071, 1073 (9th Cir.1995). In *Bahena–Cardenas,* we held that the separate "arrest" element required a warrant of deportation to have been issued by the INS in conformity with its regulatory procedures and served on the alien in question, in order for a subsequent § 1326 conviction to be lawful. In the present case, Mendez–Casillas contends that a valid warrant was never issued by the INS, nor was one ever served on him prior to his forced departure from the country in 1994. Mendez–Casillas's argument thus boils down to the claim that because the warrant of deportation was unsigned, the

INS violated its own regulations, thereby rendering his arrest a nullity.

The government, on the other hand, argues (as the district court found at trial) that a § 1326 violation constitutes a continuing offense, such that an alien who illegally reenters the U.S. is deemed to be in continual violation of the law until his eventual capture. According to the government, Mendez–Casillas was therefore in violation of § 1326 at the time of his capture in 1998, and the 1998 (post-IIRIRA) version of the criminal statute should apply to his case. Notably, IIRIRA removed the "arrest" requirement, such that an alien only has to reenter the country after having "been denied admission, excluded, deported, or removed, or has departed the United States while an order of exclusion, deportation, or removal is outstanding" to be in violation of the statute. 8 U.S.C. § 1326(a) (1999).

We have held, in accordance with the government's position, that a § 1326 violation constitutes a continuing offense for sentencing and venue purposes. *See United States v. Ruelas–Arreguin,* 219 F.3d 1056 (9th Cir.2000) (holding that because a § 1326 violation constitutes a continuing offense, venue may lie in any district in which the continuing conduct occurred); *United States v. Salazar–Robles,* 207 F.3d 648 (9th Cir.2000) (same); *United States v. Ramirez–Valencia,* 202 F.3d 1106 (9th Cir. 2000) (holding that because a § 1326 violation constitutes a continuing offense, the IIRIRA-amended Sentencing Guidelines applied to the case); *cf. United States v. Hernandez,* 189 F.3d 785, 789–90 (9th Cir.

**5.** The pre-IIRIRA version of § 1326(a) reads, in pertinent part, as follows:

"any alien who—
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States. . . ."
without prior authorization is guilty of a criminal violation.

8 U.S.C. § 1326(a) (1994).

**6.** As best elaborated in *United States v. Wong Kim Bo,* 466 F.2d 1298, 1303–04 (5th Cir. 1972), the "arrest" requirement in § 1326(a) refers to the issuance and service of the INS warrant which precedes deportation, and not the alien's arrest on an underlying (or, for that matter, an unrelated) criminal charge.

1999) (holding that the crime of being "found in" the U.S. continues until the INS discovers the defendant, but that such discovery also completes the crime and thereby provides a limitation on where venue may lie for purposes of criminal prosecution); *see also United States v. Pacheco-Medina*, 212 F.3d 1162, 1165 (9th Cir.2000) (stating that "courts have made it clear that § 1326 sets forth three distinct offenses: 'enter,' 'attempt to enter,' and 'found in,'" but also noting "that the concept of entry not only illuminates but also is embedded in the 'found in' offense") (citations omitted). At the same time, we note that other circuits have decided this question differently in other legal contexts. *See United States v. Rivera-Ventura*, 72 F.3d 277 (2d Cir.1995) (concluding with respect to the running of the statute of limitations that Congress did not intend § 1326 to constitute a continuing offense); *United States v. Rodriguez*, 26 F.3d 4, 7 n. 4 (1st Cir.1994) (noting disagreement in the circuits over whether a § 1326 violation is a continuing offense).

■ We need not decide Mendez-Casillas' claim that pre-IIRIRA law should govern his appeal because we find that even under the pre-IIRIRA version of § 1326, and in spite of the clerical defect in his warrant of deportation, Mendez-Casillas was legitimately arrested and deported in February 1994. Put another way, although the INS deputy director may have neglected to sign the warrant, our review of the record confirms that the INS issued the warrant and Mendez-Casillas received service, as well as notice of the penalties attending any unauthorized return to this country, thus fulfilling the "arrest" requirement of a § 1326 offense.

Here, in spite of the INS's missing signature, Mendez-Casillas (a.k.a. Jesus Ramirez-Salinas) himself signed and fingerprinted the back of the form accompanying the warrant of deportation. As the government correctly points out, this clearly indicates that Mendez-Casillas received these documents prior to his departure from the country. Together with the uncontroverted trial testimony of INS agents who accompanied Mendez-Casillas to the border crossing, our review of the evidence confirms that the basic purpose of the warrant was fulfilled: Mendez-Casillas received sufficient notice of his impending departure and the criminal penalties attending any unauthorized return. *Cf. Quezada*, 754 F.2d at 1194 (pointing to evidence such as the alien's thumbprint on the warrant of deportation, as well as INS agent testimony, to reject a claim that the defendant had never been "arrested" for lack of service with the warrant); *United States v. Hernandez*, 693 F.2d 996 (10th Cir.1982) (noting the presence of the defendant's signature on three deportation warrants as grounds for rejecting a claim that he had never been "arrested" for § 1326 purposes).

To be sure, Mendez-Casillas cites language from *Bahena-Cardenas*[7] for the proposition that "before criminal sanction can be imposed for re-entry after arrest and deportation, it must be shown that the INS followed [the applicable regulations] and issued a Warrant of Deportation." 70 F.3d at 1073 (internal quotations omitted). In addition, "the term 'arrested' in 8

---

**7.** *Bahena-Cardenas* involved a warrant of deportation that was erroneously issued by the INS against an alien whose deportation order had been stayed pending appeal to the BIA. Before he was served with the premature warrant, Bahena-Cardenas left the country of his own volition. Upon his return to the U.S. several weeks later, Bahena-Cardenas was arrested and charged with violating § 1326. The BIA subsequently issued an opinion finding that Bahena-Cardenas had "self-deported" and thereby waived his appeal of the deportation order. *Bahena-Cardenas*, 70 F.3d at 1072. We reversed the Bahena-Cardenas's conviction, however, for the reasons explained above.

U.S.C. § 1326 requires that a warrant of deportation be served on the alien." *Id.; cf. United States v. Farias–Arroyo,* 528 F.2d 904 (9th Cir.1975) (finding that a warrant had in fact been issued, and holding that the appellant's claim that he had not been "arrested" because he was never physically detained in custody was "without merit").

We find, however, that although the missing signature may have technically violated the letter of 8 C.F.R. § 241.32, courts that have considered the nature and purpose of the arrest requirement in the deportation context have focused on the notice function that such warrants are meant to provide. While no court has directly considered the problem of a defective deportation warrant,[8] particularly involving a clerical error akin to the missing signature in this case, the prevailing case-law appears to suggest that the "arrest" element of a § 1326 violation is vitiated only when the notice function that warrants provide has been significantly impaired.

For example, in *Bahena–Cardenas,* we underscored the importance of the fact that "Congress affirmatively intended that aliens be afforded all notice reasonably possible relating to their status." *Bahena–Cardenas,* 70 F.3d at 1074 (internal quotations omitted). We expressly rejected the government's contention that "mere issuance of the warrant is itself an 'arrest' under [§ 1326(a) ]," insisting instead that an alien also needed to be served with the warrant to satisfy the "arrest" requirement. *Id.* at 1073–74. Quoting *Wong Kim Bo,* we declared that *"[w]ithout notice, there can be no arrest,* and no restraint on liberty that an arrest connotes." *Id.* at 1074 (internal quotations omitted) (emphasis added). Similarly, outside of this circuit, in *United States v. Quezada,* 754 F.2d 1190 (5th Cir.1985), the Fifth Circuit emphasized that under *Wong Kim Bo,* "an 'arrest' under the statute is accomplished by service on the alien of the warrant of deportation, thus providing the requisite notice to trigger criminal sanctions for illegal reentry thereafter.... *This notice is critical ... for it insures that criminal sanctions are not imposed for reentry where the alien does not know that he has previously been officially deported." Id.* at 1192 (emphasis added).

We therefore decline to hold that a clerical error that technically contravenes the letter of 8 C.F.R. § 241.32 amounts to a per se violation of § 1326's arrest requirement under pre-IIRIRA law. Accordingly, we conclude that the missing signature did not vitiate the "arrest" element of Mendez–Casillas's § 1326 conviction.[9]

---

**8.** *United States v. Ayala,* 35 F.3d 423 (9th Cir.1994), constitutes the closest case in factual terms. There the INS had provided the deported alien with an erroneous Form I–294, which typically accompanies a warrant of deportation and spells out the criminal penalties accompanying any subsequent illegal reentry. The form was inaccurate because it only warned Ayala of a maximum two years imprisonment for illegal reentry, whereas prior changes in the law had increased the penalty to fifteen years for aliens who were deported upon commission of an aggravated felony. We rejected Ayala's contention that the government should be bound by the two

year maximum on principles of imperfect estoppel.

**9.** The government also claims that Mendez–Casillas was effectively arrested because a federal detainer was served upon the Washington state prison where he was incarcerated in 1994. The detainer required the state to turn Mendez–Casillas over to INS custody upon the completion of his prison term. The district court agreed with the government that Mendez–Casillas had "suffered a de facto arrest," given that he was in custody when the INS detainer was issued, "making it unnecessary, as I understand it, for a warrant of

## IV.

█ Mendez–Casillas also argues that the defective warrant effectively means that he was never validly "deported" for § 1326 purposes. We readily dismiss this claim, however, because it is well settled that the lawfulness of a prior deportation is not a required element of a § 1326 violation.

 In *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court squarely rejected the view "that a deportation is an element of the offense defined by § 1326 only if it is 'lawful,'" *id.* at 834, 107 S.Ct. 2148, given that "[t]he text and background of § 1326 ... indicate no congressional intent to sanction challenges to deportation orders in proceedings under § 1326." *Id.* at 837, 107 S.Ct. 2148; *see also United States v. Alvarado–Delgado*, 98 F.3d 492 (9th Cir.1996) (holding that the lawfulness of a prior deportation is not a required element of a § 1326 offense).[10] Only if the claimed illegality of the deportation rises to the level of a due process violation—specifically, the lack of meaningful judicial review of the INS administrative proceeding—may the deportation not be used to establish an element of a criminal offense. For example, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Mendoza–Lopez*, 481 U.S. at 837–38, 107 S.Ct. 2148. "If the violation of [the alien's] rights ... amounted to a complete deprivation of judicial review of the determination, that determination may not be used to enhance the penalty for an unlawful entry under § 1326." *Id.* at 840, 107 S.Ct. 2148. Thus, it would appear that Mendez–Casillas's claim that he was not validly "deported" (which, in any event, was evidently forfeited when Mendez–Casillas declined to exercise his right to appeal the IJ's ruling) can only survive if it rises to the level of a due process violation—a lofty standard that is hardly met by a clerical error on his deportation papers.[11]

## Conclusion

Even applying the pre-IIRIRA version of § 1326 to this case, we conclude that Mendez–Casillas was validly "arrested and deported" in 1994, despite the missing signature on his warrant of deportation. We

---

arrest." However, we can find no cases in support of the proposition that an INS detainer may substitute for a warrant of deportation or constitute a "de facto arrest" for § 1326 purposes. Furthermore, such detainers arguably do not provide aliens with sufficient notice of the consequences of illegal reentry, which, as elaborated above, lies at the heart of the arrest requirement. We therefore reject the government's argument that the detainer served as the functional equivalent of an arrest.

**10.** In *Alvarado–Delgado*, we held that the defendant had not demonstrated sufficient prejudice from the alleged errors in his prior deportation proceedings as to meet the *Men-* *doza–Lopez* standard for allowing collateral attacks on such proceedings. *Alvarado–Delgado*, 98 F.3d at 493. By contrast, in *Singh v. Waters*, 87 F.3d 346 (9th Cir.1996), we found under pre-IIRIRA law that a petitioner had not been "deported" for § 1326 purposes because the INS had contravened a stay of deportation issued prior to his removal, and because Singh had effectively been denied his statutory right to counsel during the deportation proceedings.

**11.** Indeed, Mendez–Casillas never contends in his briefs or elsewhere that he suffered a constitutional-level violation as a result of the INS's failure to sign his warrant of deportation.

therefore affirm his conviction for illegal reentry after deportation.

**AFFIRMED.**