RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

ERNST C. ZUNDEL; INGRID A. ZUNDEL,
          *Plaintiffs-Appellants*,

    *v.*

ERIC H. HOLDER, JR.; IMMIGRATION AND
NATURALIZATION SERVICE; UNITED STATES
OF AMERICA; MICHAEL J. CONWAY; JIMMY
MOUNCE; GARY SLAYBAUGH; JANET
NAPOLITANO; JAMES BERRONG; DOES I
through X,

          *Defendants-Appellees*.

No. 10-6012

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 03-00105—Thomas A. Varlan, District Judge.

Argued: January 20, 2012

Decided and Filed: May 7, 2012

Before: SILER, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Bruce Leichty, LAW OFFICES OF BRUCE LEICHTY, Clovis, California for Appellants. Christopher W. Hollis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Suzanne H. Bauknight, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, Norman H. Newton, CRAWFORD, CRAWFORD & NEWTON, Maryville, Tennessee, for Appellees. **ON BRIEF:** Bruce Leichty, LAW OFFICES OF BRUCE LEICHTY, Clovis, California for Appellants. Christopher W. Hollis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Suzanne H. Bauknight, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, Norman H. Newton, CRAWFORD, CRAWFORD & NEWTON, Maryville, Tennessee, for Appellees.

————————————

**OPINION**

————————————

ROGERS, Circuit Judge.  Ernst Zundel, a German citizen, and his wife, Ingrid Zundel, a United States citizen, appeal the district court's dismissal of their claims stemming from Mr. Zundel's deportation in 2003.  Mr. Zundel entered the United States in March 2000 under the Visa Waiver Pilot Program (VWPP), 8 U.S.C. § 1187.  He subsequently filed for permanent resident status under 8 U.S.C. § 1255.  But he failed to appear for or reschedule the hearing on his application and was subsequently deported.  The Zundels filed a petition for writ of habeas corpus, a petition for writ of mandamus, a claim for injunctive relief under the Administrative Procedure Act, and a *Bivens* action on behalf of Mrs. Zundel for loss of consortium and companionship.  The district court dismissed Mr. Zundel's petition for writ of habeas corpus. On appeal, this court converted his habeas petition into a petition for review under the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231, and denied the petition.  *Zundel v. Gonzalez*, 230 F. App'x 468 (6th Cir. 2007) (*Zundel II*).  The district court then dismissed the Zundels' remaining claims and denied their motion to amend their complaint for a third time.  Mr. Zundel's challenge to the determination that he last entered the United States under the VWPP is barred by the doctrine of res judicata.  In addition, Mr. Zundel has not shown that this court has subject matter jurisdiction over his challenge to the bar of inadmissibility imposed as a consequence of his removal.  Finally, Mrs. Zundel's *Bivens* claim for loss of consortium and companionship fails to state a claim upon which relief can be granted, and Mr. Zundel's proposed *Bivens* claim fails on statute of limitations grounds.

I.

This appeal marks the Zundels' third appearance before this court in this action. *Zundel v. Berrong*, 106 F. App'x 331 (6th Cir. 2004) (*Zundel I*); *Zundel II*, 230 F. App'x 468.  Ernst Zundel is a German citizen who, prior to entering the United States in 2000, lived in Canada for 42 years.  Mr. Zundel entered the United States on March 12, 2000,

under the VWPP, 8 U.S.C. § 1187.[1]  This pilot program permitted aliens from certain countries to enter the country as non-immigrant visitors without a visa for a period not to exceed ninety days if the alien waived "any right . . . to contest, other than on the basis of an application for asylum, any action for removal of the alien."   8 U.S.C. § 1187(b)(2). Zundel left the country shortly after his March arrival but returned on May 21, 2000—before the ninety-day period expired.

Zundel eventually moved to Sevier County, Tennessee, where he lived with his wife, Ingrid, whom he had married on January 19, 2000.  He applied for permanent residency under 8 U.S.C. § 1255 on the basis of his marriage.  The Immigration and Naturalization Service (INS)[2] notified Zundel that he would be interviewed on June 12, 2001, at the Memphis INS office.  Zundel's attorney, however, could not attend the scheduled hearing and purportedly made a written request to reschedule the interview on May 23, 2001.  The INS did not contact him to reschedule the interview.  Nor did the agency contact Zundel's attorney after he allegedly sent a follow-up letter on May 23, 2002, again asking to reschedule the interview.  Zundel's INS file does not contain a record of either request.  In the meantime, on January 30, 2002, the INS denied Zundel's application for permanent residence because he failed to appear for the hearing on June 12, 2001.

Zundel's next contact with the INS occurred on February 5, 2003, when he was arrested at his home by officers of the Sevier County Sheriff's Department, acting in coordination with the INS.   Officers transported Zundel to the Blount County, Tennessee, jail.  At the time, officers provided him with a letter, entitled "Decision," that explained that his failure to appear for his scheduled interview and his subsequent failure to reschedule or withdraw his application for permanent residence resulted in its termination because it was deemed abandoned.  The letter informed Zundel that he could

---

[1]The Pilot Program was made permanent on October 30, 2000. *See* Visa Waiver Permanent Program Act, Pub. L. No. 106-396, 114 Stat. 1637 (2000).

[2]The INS has been abolished and its functions transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (2002), 6 U.S.C. §§ 101–557.

not appeal the decision. That same day, officials also presented Zundel with a Warrant of Deportation. On February 13, 2003, the Zundels filed in the district court a "Writ of Habeas Corpus, Petition for Temporary Restraining Order and Preliminary Injunction, Complaint for Constitutional Violations, Petition to Set Bond." This petition challenged Mr. Zundel's detention and pending deportation by the INS. The district court denied the Zundels' request for emergency relief without entering a judgment. The Zundels appealed.

On February 14, 2003, this court denied the Zundels' request for an emergency motion to stay removal. On February 17, 2003, the INS deported Zundel, releasing him into Canadian custody. Upon his departure, the INS provided Zundel with a notice informing him that, under 8 C.F.R. § 217.4(b)(1), he qualified as an alien deportable under one or more sections of the Immigration and Nationality Act (INA) § 237, 8 U.S.C. § 1227. The notice informed Zundel that he was prohibited from entering, attempting to enter, or being in the United States for a period of ten years from the date of his departure pursuant to § 212(a)(9) of the INA, 8 U.S.C. § 1182(a)(9). Further, because Zundel had been in the United States unlawfully for more than a year, the notice stated that he was prohibited from entering, attempting to enter, or being in the United States for an additional ten years to run consecutively with the first ten years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II). Thus, Zundel's bar of inadmissibility would run twenty years from the date of his departure. The notice then warned Zundel of potential criminal penalties should he enter, attempt to enter, or be found in the United States without the Attorney General's express consent.

After Zundel's departure, this court determined that his removal to Canada rendered his requests for preliminary relief moot. *Zundel I*, 106 F. App'x at 334. We remanded because the Zundels' requests for permanent relief—i.e., a writ of habeas corpus vacating Mr. Zundel's deportation order and damages for alleged constitutional violations—required the district court's consideration prior to any review by this court.

First in September 2004 and again in November 2004, the Zundels filed amended petitions for a writ of habeas corpus, a writ of mandamus, injunctive relief under the

Administrative Procedure Act (APA), 5 U.S.C. §§ 702, et seq., and a *Bivens* claim for damages by Mrs. Zundel. The district court dismissed the habeas petition for lack of subject matter jurisdiction. On a second appeal, this court converted the habeas petition into a petition for review as required by the recently enacted REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231. *Zundel II*, 230 F. App'x at 472. We determined we could not review Zundel's claim that the removal decision was motivated by the federal government's hostility directed at his political beliefs; 8 U.S.C. § 1252(g) does not permit review of the Attorney General's discretionary decision to "commence proceedings." As for Zundel's claim that the INS erroneously determined that he entered the country under the VWPP and thereby waived his right to contest his removal, § 1252(g) did not bar judicial review of that decision. Even so, we held that because Zundel's most recent entry into the United States on May 21, 2000, occurred within the ninety-day admission period for which he had been provided a waiver under the VWPP, he waived, under 8 U.S.C. § 1187(b)(2), his right to contest removal. We therefore denied his petition for review. *Zundel II*, 230 F. App'x at 476. We did not address Zundel's claims for injunctive relief under the APA, nor did we consider his mandamus claim or Mrs. Zundel's *Bivens* action.

The federal defendants moved to dismiss the Zundels' remaining claims on March 25, 2008. James Berrong, Sheriff of Blount County, Tennessee, also filed a renewed motion to dismiss. The Zundels then sought to amend their pleadings a third time. The proposed Third Amended Complaint and Petition removed Mr. Zundel's petition for writ of habeas corpus but added substantive allegations concerning Mr. Zundel's February 2003 arrest in Tennessee; amended the prayer for relief to "state and clarify" the Zundels' claims for writ of mandamus and injunctive relief under the Administrative Procedure Act; added a claim for *Bivens* damages on behalf of Mr. Zundel; converted the official capacity claims against federal defendants John Ashcroft and Tom Ridge into individual capacity claims; and added Condoleeza Rice as a federal defendant.

The district court concluded that Zundel's various amended complaints and petitions (including his proposed amendments) essentially restated his initial request for judicial review of the INS's discretionary decision to issue an order of removal and were therefore barred by 8 U.S.C. § 1252(g)—the same issue considered by this court in *Zundel II*. The district court then dismissed his claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Further, the district court denied the Zundels' motion to file a Third Amended Complaint and Petition as futile because the amendments failed to cure the jurisdictional defects and because they could not withstand a motion to dismiss. The district court held that any reconsideration of the denial of Zundel's adjustment application was abandoned by operation of law at the time of his deportation pursuant to 8 C.F.R. § 245.2(a)(4)(ii)(A). Zundel also failed to raise his proposed *Bivens* claim within the applicable statute of limitations period. Further, his relation-back argument under Federal Rule of Civil Procedure 15(c) also failed because the allegations related to a set of transactions and occurrences different from those asserted in the prior pleadings. The district court next dismissed Mrs. Zundel's *Bivens* action, holding that the loss of spousal consortium was not a constitutional right that may be asserted by a spouse in a *Bivens* action. Even if such a right existed, the district court held that the federal defendants were entitled to qualified immunity. Finally, the district court held that Mrs. Zundel did not sue federal defendants Michael Conway, Gary Slaybough, Jimmy Mounce, and Sheriff Berrong (even if found to have been acting under color of federal law) in their individual capacities;[3] only in the proposed Third Amended Complaint and Petition did Mrs. Zundel assert an individual capacity *Bivens* claim against Attorney General John Ashcroft and Secretary Tom Ridge. The district court also concluded that neither Attorney General Ashcroft nor Secretary Ridge was ever personally served as required by Federal Rule of Civil Procedure 4(i)(3). The district court subsequently denied the Zundels' motion for reconsideration.

---

[3]At oral argument, the attorney for federal defendants Michael Conway, Gary Slaybough, and Jimmy Mounce conceded that the three had been sued and served in their individual capacities by Mrs. Zundel.

On appeal, Zundel claims that the VWPP did not control his last entry into the United States. He also argues that the district court had subject matter jurisdiction over his challenge to the twenty-year bar of inadmissibility imposed as a consequence of his deportation. The Zundels challenge the district court's denial of Mr. Zundel's motion to amend his complaint to add a *Bivens* claim and the court's conclusion that Mrs. Zundel failed to state a claim upon which relief could be granted in her action for *Bivens* damages.

## II.

The VWPP controlled Zundel's last entry into the United States on May 21, 2000. Therefore, he may not claim that he actually entered the country as a parolee and that he did not waive any rights upon entry, including his asserted right to challenge the lawfulness of his removal. Zundel argued, and this court decided, the applicability of the VWPP waiver in *Zundel II*. We decline to revisit that determination.

In *Zundel II*, Zundel claimed that the INS erroneously determined that he had entered the country under the VWPP, meaning he waived his right to contest his removal. 230 F. App'x at 475. Zundel legally entered the United States on March 12, 2000, under the VWPP, 8 U.S.C. § 1187. He executed a Form I-791 or Form I-94W, VWPP Information Form, whereby he waived his right to review or appeal an immigration officer's determination as to his admissibility or to contest any action in deportation, excluding an application for asylum. On appeal, Zundel argued that his re-entry into the United States in May 2000 was not governed by the VWPP even though it occurred within the ninety-day period for which he had been provided a VWPP visa waiver. This court concluded otherwise and held that Zundel waived his right to contest his removal pursuant to § 1187(b)(2) of the VWPP, and there is no basis to revisit that determination.

Zundel did not suffer a Suspension Clause violation because, as he claims, he was not given an administrative evidentiary hearing to prove he never waived his rights

under the VWPP.[4] He acknowledges that he has not been deprived of habeas relief. He nevertheless contends that he is still entitled to seek relief that would be "equivalent" to the relief afforded by a writ of habeas corpus because his previous habeas petition was converted into a petition for review. The district court did not address this argument.

Zundel made a similar argument regarding the need for a hearing that this court rejected when considering his petition for review in *Zundel II*. 230 F. App'x at 473. He previously claimed that converting his habeas petition into a petition for review under the REAL ID Act would constitute a violation of the Suspension Clause in the absence of a hearing. *Id*. This court disagreed:

> [T]he REAL ID Act draws no distinction between cases in which a hearing on the merits of the habeas petition has been held and cases in which there has been no hearing. Thus, the fact that [Zundel] has not had a hearing on the merits of his habeas petition does not preclude treating the habeas petition as a petition for review. . . . [Zundel] has not shown that a petition for review fails to provide an adequate opportunity for review of his challenge to his removal and is therefore an inadequate substitute for the writ, such that treating the habeas petition as a petition for review would result in a violation of the Suspension Clause.

*Id*. In another case, this court noted that because a petition for review provides an alien with the availability of the same scope of review as a writ of habeas corpus, facially at least, this limitation on habeas relief does not violate the Suspension Clause. *Muka v. Baker*, 559 F.3d 480, 485 (6th Cir. 2009).

### III.

In his proposed Third Amended Complaint and Petition, Zundel challenges the INS notice he received upon deportation informing him that he may not enter the country for a period of twenty years. He argues that the two ten-year bars should not run consecutively and, in the alternative, that he is not subject to either bar. Zundel's challenge to the twenty-year bar of inadmissibility is not ripe for consideration.

---

[4]Zundel did in fact receive a hearing in the district court on November 2, 2004, and November 18, 2004. He describes the proceeding as "a rushed in absentia federal court hearing without benefit of any discovery rights or evidentiary opportunities after his removal." Appellant Br. at 14.

The notice provided to Zundel, the equivalent of a Form I-294, is just that—a notice. It warns the deported alien of the potential criminal penalties associated with any subsequent illegal reentry. *See, e.g.*, *United States v. Fernandez-Cabrera*, 625 F.3d 48, 50 (1st Cir. 2010); *United States v. Miranda-Ramirez*, 309 F.3d 1255, 1257–58 (10th Cir. 2002); *United States v. Mendez-Casillas*, 272 F.3d 1199, 1205 n.8 (9th Cir. 2001). The notice is a "document with no relevant legal force." *United States v. Perez-Torres*, 15 F.3d 403, 406 (5th Cir. 1994). Even in cases where a deported alien received an erroneous Form I-294 misstating the criminal penalties resulting from illegal reentry, courts have held that such receipt does not provide an appropriate basis for limiting a defendant's sentence; nor does this receipt transform a statutorily authorized sentence into a due process violation. *United States v. Cruz-Flores*, 56 F.3d 461, 463–64 (2d Cir. 1995).

The district court reached the same conclusion—that Zundel's claim is not reviewable—but on different grounds. The court held that Zundel waived his right to challenge the bars of inadmissibility because he last entered the country under the VWPP. As a result, the twenty-year bar was not reviewable. This court may affirm the district court's dismissal of a plaintiff's claims on grounds not relied upon by the district court. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Because Zundel's claim is not ripe for consideration, we need not reach the waiver question under 8 U.S.C. § 1187(b).

That the notice Zundel received upon his departure has no legal effect does not deprive him of recourse. First, Mrs. Zundel may file a Form I-130, Petition for Alien Relative, on his behalf. Next, should he choose, Zundel may apply for reentry into the United States and raise his concerns about the consecutive application of the bars of inadmissibility with the appropriate consular official. If he is ultimately denied admission, he will stand in the same position with respect to any further recourse as someone who received no notice.

Finally, because the notice has no present legal effect, there is no basis for exercising our extraordinary power of issuing a writ of mandamus under 28 U.S.C.

§ 1361. Moreover, nothing in the Administrative Procedure Act trumps a proper ripeness basis for denying judicial review.

## IV.

Zundel also requests that this court order the United States Citizenship and Immigration Services (USCIS) to adjudicate his motion for reconsideration of its denial of his adjustment of status application. This court lacks jurisdiction over Zundel's request because 8 U.S.C. § 1252(g) bars the court from hearing any claim arising from the Attorney General's decision to adjudicate (or not adjudicate) cases.

When Zundel failed to appear for his June 2001 interview with the INS, the agency denied his application and deemed it "abandoned." Zundel later filed a motion for reconsideration, which he claims has yet to be adjudicated. The district court determined that it could not review the denial of his adjustment of status application because his application was abandoned by operation of law upon his deportation under 8 C.F.R. § 245.2(a)(4)(ii)(A). This appears correct. Zundel, however, claims that the district court misconstrued his request. According to Zundel, he has not requested review of the denial of his application. Rather, he requested that the district court order the USCIS to complete its administrative review of his motion. Zundel has not shown any statutory or regulatory basis for requiring further consideration of a motion that the agency has determined to have been abandoned. Although styled a request to complete review, the agency has made clear that it deems the application to have been abandoned. Any further "consideration" would only confirm that. Because the law provides that deportation results in abandonment, there can be no point to requiring further agency action.

## V.

Mrs. Zundel has not stated a constitutional claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for loss of companionship and consortium. Mrs. Zundel contends that, as of February 5, 2003 (the date of Mr. Zundel's arrest), she was deprived of the right to her husband's

companionship and consortium.   She expands her claim in her Third Amended Complaint and Petition to allege that she was also deprived of the benefits of marriage. In dismissing her claim under Federal Rule of Civil Procedure 12(b)(6), the district court held that the loss of spousal consortium is not a constitutional right that may be asserted by a spouse in a *Bivens* action, and the court deemed her proposed amendment to be futile.  In any event, the court concluded, the defendants would be entitled to qualified immunity.

Under *Bivens*, the Supreme Court has recognized a cause of action against federal officials for certain constitutional violations when no alternative processes exist to protect the plaintiff's interests and no special factors counsel against recognizing the cause of action.  403 U.S. 388;  *Koubriti v. Convertino*, 593 F.3d 459, 466 (6th Cir. 2010) (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). Through her *Bivens* claim, Mrs. Zundel essentially seeks to circumvent the administrative process governing the U.S. immigration system and receive damages for what she claims is her husband's unlawful deportation.  She claims that the federal defendants and Sheriff Berrong, by deporting her husband, have unconstitutionally interfered with her right to consortium and companionship with her husband.  She frames this right in strong terms, equating the freedom to marry with the freedom to cohabit with one's spouse.  Even if the Constitution protects one's right to consortium and companionship, something we need not decide, it does not protect the unlimited right Mrs. Zundel asks this court to recognize.

The Seventh Circuit in *Niehus v. Liberio*, 973 F.2d 526 (7th Cir. 1992), cautioned against a similar broad interpretation of consortium.  Acknowledging that the Supreme Court has recognized that the freedom to marry is a liberty interest protected by the Due Process Clause, *id.* at 532 (citing *Loving v. Virginia*, 388 U.S. 1, 12 (1967); *Zablocki v. Redhail*, 434 U.S. 374, 383–86 (1978); *Turner v. Safley*, 482 U.S. 78, 94–99 (1987)), and that the sexual dimension of marriage is one of the principal interests encompassed by the right to consortium as recognized in *Griswold v. Connecticut*, 381 U.S. 479 (1965), the court nevertheless declined to embrace an expansive view of a constitutionally

protected right to consortium, *Niehus*, 973 F.2d at 534. Deprivations of the lesser services included within the term "consortium" are not deprivations of liberty contemplated under the Constitution. *Id.* At one end of the spectrum, the court noted that a loss of consortium could be as minor and transient as a wife's losing a month's help from her husband in performing household chores; at the other end it could be "as major as the loss of all spousal services consequent upon an injury that renders the injured spouse a human vegetable." *Id.* In the end, the court declined to recognize the broad right proposed by the plaintiff.

Like the plaintiff in *Niehus*, Mrs. Zundel argues that not only is one's liberty interest in companionship and consortium protected by the Constitution, but also that the right is without limitation. The practical effect of endorsing her interpretation would provide every citizen spouse with a claim for monetary damages should the alien spouse be lawfully deported. Moreover, her reading would permit individuals whose spouses have been lawfully incarcerated to sue for damages based on the government's involvement in prohibiting their cohabitation during the period of incarceration. In the prison context, the Supreme Court has recognized a constitutionally protected right to marriage, *Turner*, 482 U.S. at 96, but it has not recognized a constitutional right to engage in contact visits or conjugal visits while incarcerated. *See Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (no due process right to unfettered visitation); *Block v. Rutherford*, 468 U.S. 576, 585–88 (1984) (pretrial detainees have no constitutional due process right to contact visits)).

Moreover, Mrs. Zundel is not prevented from living with her husband—she simply may not do so in the United States so long as her husband is lawfully barred from entering this country. We need not decide whether the Constitution ever protects one's right to companionship and consortium, nor whether the spouse of an alien may ever maintain a *Bivens* action based on the deprivation of such right. Suffice it to say Mrs. Zundel may not maintain a claim for the unqualified right she asserts in this context.

VI.

The district court properly denied Mr. Zundel's attempt to add a *Bivens* claim against the federal defendants and Blount County Sheriff James Berrong because that claim was asserted after the applicable statute of limitations had run and thus could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In his proposed Third Amended Complaint filed on June 2, 2008, Zundel alleges that, while incarcerated in the Blount County Jail in 2003, a "swat team" pulled him and other inmates from their beds and dragged them down a hall where "barking, salivating dogs snarled two feet from their faces." Zundel maintains that Sheriff Berrong knew of these acts and functioned as a contracting party or agent for the federal government in committing the acts. Zundel also alleges that Attorney General Ashcroft and Secretary Ridge directed this abuse. Because these acts occurred in Tennessee in 2003 and the applicable statute of limitations for *Bivens* claims in Tennessee is one year, *see* Tenn. Code Ann. § 28-3-104(a)(3); *Mason v. Dep't of Justice*, 39 F. App'x 205, 207 (6th Cir. 2002), Zundel's claim made in 2008 was not timely.

Zundel incorrectly argues that the court should apply a six-year limitation period as set forth in Tenn. Code Ann. § 28-3-109(a)(2). That statute requires that "[a]ctions against the sureties of guardians, executors and administrators, sheriffs, clerks, and other public officers, for nonfeasance, misfeasance, and malfeasance in office" be brought within six years after the cause of action accrued. Tenn. Code Ann. § 28-3-109(a)(2). Zundel characterizes his *Bivens* claim as one for a sheriff's "nonfeasance, misfeasance, and malfeasance" in an attempt to avoid the one-year limitations period. In his view, because a *Bivens* action is nonstatutory, and because Tenn. Code Ann. § 28-3-104 states that the one-year period applies to claims brought under federal civil rights *statutes*, of which a *Bivens* claim is not, the one-year period is inapplicable to his *Bivens* claim.

This court has previously explained that "[i]n addressing the timeliness of a federal constitutional damages action, 'the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.'" *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (quoting *Wilson v. Garcia*,

471 U.S. 261, 266–67 (1985)).  This practice applies to § 1983 actions and to *Bivens* actions because neither the Federal Constitution nor the § 1983 statute provides timeliness rules governing implied damages.  *Id.* (citing *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir. 1987)).  Here, Zundel has not shown that applying the Tennessee one-year limitations period for personal tort actions is inconsistent with federal law or policy.  Nor can Zundel point to any cases applying Tennessee's six-year limitations period to a *Bivens* claim.  Moreover, the Tennessee provision on which Zundel relies appears to address actions involving the abuse or misuse of a public office by a sheriff—a claim of a different sort than Zundel's.

Further, nothing prohibited Zundel from amending his complaint to allege this claim within the applicable limitations period.  First, even though Zundel twice appealed decisions of the district court, the nature of those appeals meant that the district court retained jurisdiction to act on other aspects of the action not related to the appeals.  Second, Zundel showed that he knew this and was capable of continuing to litigate the matter.

On February 13, 2003, Zundel filed a writ of habeas corpus, a petition for a temporary restraining order and preliminary injunction, and a complaint for constitutional violations.  That same day, the district court denied his request for emergency relief (i.e., an injunction against his transfer and against his detention without bond) without entering a judgment.  The following day, February 14, 2003, Zundel filed a notice of appeal.  This court then interpreted the district court's action as merely a denial of preliminary relief from Zundel's deportation order and concluded that his request was moot in light of his deportation.  *Zundel I*, 106 F. App'x at 334.  Zundel's request for permanent relief—a writ of habeas corpus—remained for the district court's decision.  This court's mandate issued on September 27, 2004, over nineteen months after Zundel filed his notice of appeal.

"As a general rule, an effective notice of appeal divests the district court of jurisdiction over the matter forming the basis for the appeal."  *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987).  However, "an appeal from an order

granting or denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the action on the merits." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (quoting 9 M. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 203.11, at 3–54 (2d ed. 1989)).  The district court retains some jurisdiction to continue deciding other issues during the pendency of an interlocutory appeal. *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1528–29 (6th Cir. 1992) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985)). Even though Zundel's first appeal only concerned the denial of preliminary relief from removal, he failed to move during the pendency of the appeal to amend his complaint and add his claim.

Nor did Zundel amend his complaint to add this particular claim after this court issued its first mandate on September 27, 2004.  Zundel filed an amended complaint and petition on September 24, 2004, and again on November 10, 2004, without including the claim.  When the district court dismissed Zundel's habeas petition several months later on February 9, 2005, the court's judgment made clear that it "shall not stay or terminate the remaining causes of action as to any claims or parties."  Zundel filed his second notice of appeal that same day—February 9, 2005.  He acknowledged the district court's judgment when, in a motion to amend his complaint to allow for the naming of new United States appointees (Attorney General Alberto Gonzales and Department of Homeland Security Secretary Michael Chertoff), he stated that the district court's order made it clear that his remaining claims had not been stayed or terminated.  The district court denied his motion as procedurally improper on March 8, 2005.  On April 15, 2005, the district court subsequently denied the federal defendants' motion to dismiss the remaining claims during the pendency of the appeal.  Even so, Zundel continued to litigate the action, issuing subpoenas to federal employees.  Only in October 2005 did the federal defendants move for a protective order and stay of discovery on the pending claims, which the district court granted.  At this point, over a year had passed since this court issued its mandate following Zundel's first appeal.

Zundel may not escape the limitations period by claiming that he did not learn of the grounds for his *Bivens* claim until 2006. He alleges that he discovered the existence of a "federal program of dog intimidation" inflicted on inmates in U.S. county jails at that time. As the district court correctly held, the alleged misconduct involving dogs, standing alone, could have supported a *Bivens* claim even without evidence of organized federal misconduct.

Finally, Zundel's claims do not relate back for purposes of Federal Rule of Civil Procedure 15(c). The allegations of abuse at the Blount County Jail pertained to a new set of conduct, transactions, and occurrences that were distinct from those raised in Zundel's Initial Petition, as well as his First and Second Amended Complaints. Under Fed. R. Civ. P. 15(c), a party may add a new legal theory to an amended pleading so long as it arises out of the same transaction or occurrence. *Hall v. Spencer Cnty., Ky.*, 583 F.3d 930, 934 (6th Cir. 2009). While Fed. R. Civ. P. 15(c)(2) does not define the scope of the terms "conduct, transaction, or occurrence," the court should ask "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Id*. (quoting *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007)). Here, Zundel mentioned the "dog terrorization" issue on May 17, 2006, in his motion to modify the district court's stay and to amend him complaint. But as noted by the district court, his previous pleadings were based solely on his arrest and deportation—not on abuse he allegedly suffered at the Blount County Jail. The federal defendants were not on notice that they could be called to answer for these allegations.

Because Zundel did not attempt to add his claim within the applicable statute of limitations, the district court correctly denied his motion to amend the complaint and add the claim. We need not reach the federal defendants' argument that § 1252(g) also bars Zundel's claim.

VII.

For the foregoing reasons, we affirm the judgment of the district court.