RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────

TODD N. ZAPPONE; CARRIE M. ZAPPONE; DUSTIN A.
ZAPPONE; SNZ; DNZ,

　　　　　　　　　*Plaintiffs-Appellants*,

　　　*v.*

　　No. 16-4111

UNITED STATES OF AMERICA, et al.,

　　　　　　　　　*Defendants-Appellees*.

───────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:15-cv-02135—Jack Zouhary, District Judge.

Argued: July 27, 2017

Decided and Filed: September 7, 2017

Before: BATCHELDER, GIBBONS, and COOK, Circuit Judges.

───────────

## COUNSEL

**ARGUED:** William T. Whitaker, WILLIAM T. WHITAKER CO. LPA, Akron, Ohio, for
Appellants. Sherra Wong, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellees. **ON BRIEF:** William T. Whitaker, WILLIAM T. WHITAKER CO. LPA,
Akron, Ohio, for Appellants. Bruce R. Ellisen, Robert J. Branman, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

───────────

## OPINION

───────────

COOK, Circuit Judge. Todd N. and Carrie M. Zappone ("Zappones") sued the United
States and several IRS agents ("Defendants"), alleging state-law and constitutional torts

stemming from a search of the Zappones' business and a seizure of cash from their company safe. The district court granted summary judgment in favor of the Defendants, concluding that the claims were time barred. We AFFIRM.

**I.**

The Zappones own Ohio Scrap Corporation ("OSC"), a scrap-metal recycling business in Delta, Ohio. On November 8, 2012, IRS Special Agents executed search-and-seizure warrants on OSC's offices and the Zappones' home in the course of investigating alleged tax evasion and illegal restructuring. During the search, the Special Agents arrested the Zappones and seized their computers, cell phones, business records, and a large quantity of cash from the company safe. When the Special Agents took the money to The Brink's Company after the search, the security company "counted [it] and issued a receipt . . . in the amount of $1,264,000." But the Zappones maintain that the safe contained significantly more—$3,150,000 in total—and that the Special Agents pocketed the excess cash.

In April 2013, the United States brought a civil-forfeiture proceeding against the $1,264,000. *See United States v. $1,264,000 in U.S. Currency*, No. 3:13-cv-00905 (N.D. Ohio Apr. 22, 2013). Shortly thereafter, the Zappones asserted claims against the currency for that amount. In June, however, they filed amended claims alleging that the amount of the defendant currency "is understated with the true value at approximately Three Million One Hundred Fifty Thousand Dollars ($3,150,000)."

Alongside the civil-forfeiture case, the Zappones pursued other avenues for retrieving the Special Agents' purportedly ill-gotten gains. In July 2014, the Zappones and OSC submitted administrative claims to the IRS seeking $1,886,000, the difference between the amount of currency allegedly seized and the amount that was then the *res* of the civil-forfeiture action. The claims arrived under a cover letter from attorney Michael T. Arnold, dated July 21, 2014. In addition to the claims, the Zappones submitted executed power-of-attorney forms that identified their counsel as Arnold, Robert J. Fedor, and Benjamin C. Heidinger and listed their counsel's address. The IRS received these materials in August 2014.

On February 11, 2015, the IRS mailed letters denying the claims via certified mail to Fedor and Arnold.  The letters advised the lawyers that their "client[s] may contest this determination and bring suit against the United States in the appropriate United States district court no later than six months after the date of the mailing of this notification."  The attorneys received the denials two days later.  By this time, however, the Zappones had switched counsel.  But they had not notified the IRS of Arnold and Fedor's withdrawal of representation; nor is there record of the denial letters being returned to the IRS as undeliverable.

On October 14, 2015, the Zappones[1] filed the complaint in this case against twelve IRS employees and one IRS subcontractor, alleging both state-law torts (conversion, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy) and constitutional claims (violation of their due process rights and unreasonable search and seizure).  These claims stemmed from the IRS Special Agents' execution of the search-and-seizure warrants on the Zappones' property and the purported misappropriation of their cash.  The district court later substituted the United States for the individual defendants with respect to the state-law claims.

After a status conference, the district court directed the Defendants to file a motion on the threshold issue of whether the applicable statutes of limitations barred the state-law and constitutional claims.  Thereafter, the Defendants moved to dismiss all claims, and the Zappones opposed the motion.  Recognizing that it would have to consider matters outside the complaint to address the parties' statute-of-limitations arguments, the district court treated the motion to dismiss as one for summary judgment.  The court decided in favor of the Defendants, concluding that the Zappones had filed their state-law and constitutional claims outside the appropriate limitations periods and rejecting their requests for equitable tolling.  The Zappones appealed.

**II.**

We review de novo the district court's determination that the applicable statutes of limitations barred the Zappones' state-law and constitutional claims.  *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 938

---

[1]The Zappones' three children—Dustin A. Zappone, SNZ, and DNZ—also brought state-law claims in this case.  The United States moved to dismiss their claims, and the district court granted the motion.  Neither the Zappones nor their children have challenged that ruling on appeal.

(6th Cir. 1999)). We also review de novo the district court's "decision on the application of equitable tolling where the facts underlying the equitable tolling are undisputed." *Chavez v. Carranza*, 559 F.3d 486, 493 (6th Cir. 2009) (citation omitted). "When the facts are in dispute, we apply an abuse of discretion standard." *Id.* (citation omitted).

**A.**

We address the timeliness of the Zappones' state-law claims against the United States first. The district court concluded that the statute of limitations under the Federal Tort Claims Act ("FTCA" or the "Act") barred these allegations because the Zappones filed their complaint over six months after the IRS mailed notices denying their administrative claims. The court also rejected the Zappones' argument for equitable tolling, concluding that their circumstances did not entitle them to relief under the doctrine. We agree with the district court with respect to both determinations.

Although sovereign immunity generally shields the government from suit, *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (citation omitted), the FTCA, 28 U.S.C. § 2671, *et seq.*, waives that immunity for certain tort claims. Specifically, it allows a plaintiff to sue the federal government for personal injury or property damage "caused by the negligent or wrongful act or omission" of government employees acting within the scope of their employment. *Id.* § 1346(b)(1); *see also Chomic v. United States*, 377 F.3d 607, 609 (6th Cir. 2004). But in order to benefit from the FTCA's waiver, a plaintiff must comply with two limitations periods. First, he must present an administrative claim "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Second, he must bring the FTCA claim "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." *Id.* If he fails to meet either of these time constraints, his "tort claim against the United States shall be forever barred." *Id.*

No party disputes that the Zappones did not satisfy the second of the two FTCA limitations periods. After the IRS mailed its denial notice for their administrative claims on February 11, 2015, the Zappones had until August 11, 2015, to bring their state-law claims. *See*

*id.* The Zappones failed to sue, however, until October 14, 2015—as the district court summed up, "two months too late."

Hoping to save their claims, the Zappones point to *United States v. Kwai Fun Wong*, in which the Supreme Court held that a court may equitably toll the time bar for FTCA claims filed outside the Act's two statute-of-limitations periods. 135 S. Ct. 1625, 1638 (2015). They contend that the district court erred in declining to apply the equitable-tolling doctrine to their state-law claims. We disagree.

**1.  The Equitable-Tolling Standard.**

In general, equitable tolling is available "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jackson v. United States*, 751 F.3d 712, 718 (6th Cir. 2014) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Although "equitable tolling may be applied in suits against the government, courts will only do so sparingly, and not when there has only been a garden variety claim of excusable neglect." *Id.* (quoting *Chomic*, 377 F.3d at 615). A litigant "carr[ies] the burden of establishing [his] entitlement to equitable tolling." *Id.* at 718–19 (citation omitted).

Historically, this court has considered five factors in evaluating whether to apply equitable tolling to a late claim. *See, e.g.*, *Jackson*, 751 F.3d at 719; *Chomic*, 377 F.3d at 609. These factors are: "(1) the plaintiff's lack of notice of the filing requirement; (2) the plaintiff's lack of constructive knowledge of the filing requirement; (3) the plaintiff's diligence in pursuing her rights; (4) an absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Jackson*, 751 F.3d at 719 (citing *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

But this court has also recognized limitations to this approach, casting doubt on the need for strict adherence to it. In *Graham-Humphreys v. Memphis Brooks Museum of Art*, for example, we observed that the five factors are neither comprehensive nor material in all cases. 209 F.3d 552, 560–61 (6th Cir. 2000) (citing *Truitt*, 148 F.3d at 648); *see also Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). And "a litigant's failure to meet a legally-mandated deadline" due to "unavoidab[le] . . . circumstances beyond that litigant's control" is often the most

significant consideration in courts' analyses, rather than any particular factor of the five-part standard. *Graham-Humphreys*, 209 F.3d at 560–61 (citations omitted).

Notably, the Supreme Court has articulated a more streamlined, two-factor test for analyzing equitable-tolling requests in the habeas context. In *Holland v. Florida*, the Court held that a prisoner requesting equitable tolling must demonstrate both "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Later, the Court applied this test to determine the timeliness of a claim under the Contract Disputes Act, although noting that it "had no occasion to decide whether an even stricter test" or "a more generous test than *Holland*'s should apply" to that matter and other non-habeas cases. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755–56 & 756 n.2 (2016); *see also Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231–32 (2014). And, in dicta in *Wong*, the same case in which it held that equitable tolling applied to FTCA suits, the Court alluded to the two-factor *Holland* test. *See* 135 S. Ct. at 1633.

The government urges us to adopt the two-part *Holland* test to assess the timeliness of the Zappones' state-law claims, asserting that it is more streamlined and avoids the drawbacks of the five-factor approach this court has identified in previous cases. Although these observations are persuasive, our hands are mostly tied. Because the Supreme Court has never expressly adopted the *Holland* test outside of the habeas context, *see Menominee Indian Tribe*, 136 S. Ct. at 756 n.2, and because this court has previously applied the five-factor approach in FTCA suits, *see Jackson*, 751 F.3d at 719, the law-of-the-circuit doctrine precludes us from supplanting that approach to embrace a new equitable-tolling standard for FTCA cases (or, potentially, for other types of non-habeas civil cases). *See Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) ("Under the law-of-the-circuit doctrine, only the Court sitting *en banc* may overrule published circuit precedent, absent an intervening Supreme Court decision or a change in the applicable law."). But since the "propriety of equitable tolling must necessarily be determined on a case-by-case basis," *Truitt*, 148 F.3d at 648 (citation omitted), both standards can inform our evaluation of the Zappones' circumstances here. This is particularly so because the two approaches are quite compatible and may often lead to the same result. And we conclude that,

under either approach, the Zappones fail to meet the requisite burden to excuse the untimeliness of their state-law claims.

**2.  The Sixth Circuit's Five-Factor Approach.**

We address the Zappones' arguments with respect to each factor.

> **a.  Factors 1, 2, and 5: Lack of Actual Knowledge of the Filing Requirement, Lack of Constructive Knowledge of the Filing Requirement, and Reasonableness in Remaining Ignorant of the Particular Legal Requirement.**

The Zappones say they had no actual or constructive knowledge of the FTCA's six-month filing deadline.  They also posit that this ignorance was reasonable by contending that they did not learn of the denial letter's mailing in time to meet the appropriate deadline.  In support, they aver that: (i) they did not learn of the notice of denial mailed to attorneys Fedor and Arnold because they had switched attorneys prior to the denial; (ii) the IRS knew before mailing the denials that Fedor and Arnold no longer represented them; and (iii) the IRS should have sent the denials to their home address as shown on the administrative claims instead of to their attorneys' address.  Each of these assertions fails to persuade us that these three factors weigh in the Zappones' favor.

That the Zappones did not learn of the IRS's claim denials from their old (or new) attorneys fails to advance their cause because a lawyer's mistake normally does not warrant equitable tolling.  *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003) (citation omitted); *see also Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 754 (7th Cir. 2015).  This is especially true where, as here, the attorneys' missteps amount to "a garden variety claim of excusable neglect." *Jackson*, 751 F.3d at 718 (quoting *Chomic*, 377 F.3d at 615).

The Zappones' contention that the IRS knew of their change in counsel lacks support in the record.  The Zappones point to minutes of a telephonic status conference in the civil-forfeiture proceeding in which attorneys Fedor, Arnold, and Heidinger moved to withdraw their representation.  But that withdrawal was limited to the forfeiture case and therefore did not constitute a withdrawal from their pending administrative claim for damages.  The IRS thus had no reason to know that the Zappones' counsel had changed.

And finally, the Zappones' assertion that the IRS should have mailed the claim denials to their home address ignores what the federal regulations require. The pertinent provisions simply obligate the IRS to send a written denial "to the claimant, his attorney, *or* legal representative by certified or registered mail." 28 C.F.R. § 14.9(a) (emphasis added). The regulations do not require the IRS to send notice to the claimant's attorney *and* the claimant. *See id.*

Ultimately, the Zappones' failure to learn of the IRS's denial notice was a problem of their own making: they never informed the IRS of their change in counsel, their prior attorneys neglected to inform them of the denial, and their new attorney fell short of retrieving the denial letter in time. Plus, the Zappones pinpoint no pertinent case law[2] to shore up their theory that a failure to receive IRS denial notices entitles them to de facto equitable tolling. *Accord Jackson*, 751 F.3d at 720 ("Although [the plaintiff] argues that a situation in which a denial letter was never delivered mandates application of equitable tolling, she cites no authority to support her claim.").

### b. Factor 3: Diligence in Pursuit of Their Claims.

The Zappones next argue that they diligently pursued their claims by pointing to the efforts of their new lawyer. They contend that, upon "releasing" their prior counsel and "hiring their subsequent counsel, [they] were aware that [their new counsel] made many attempts to retrieve" the case file—which included, presumably, the IRS's denial letter. The Zappones say that "[t]here [was] little more [they] could have done but make sure their new attorney demanded the full and complete file." But this argument holds no water. There was much more the Zappones could have done: notify the IRS that their counsel had changed, revoke the power-of-attorney documents previously filed, or submit new power-of-attorney forms, as the regulations prescribe. *See* 26 C.F.R. § 601.505.

### c. Factor 4: Prejudice to the Government.

---

[2]To support their argument, the Zappones rely on *McCaffrey v. Nylon, Inc.*, No. CIV.A. 95-3787, 1996 WL 122710, at *2 (E.D. Pa. Mar. 13, 1996), in which the court tolled the limitations period for a plaintiff suing the government when the IRS sent its notice of denial to the claimant directly, but the notice was never received. The facts of that case are distinguishable from the Zappones' circumstances because: (i) the *McCaffrey* plaintiff was able to show correspondence with the IRS requesting that it communicate with his counsel rather than him, and (ii) the plaintiff presented evidence that he received no actual notice of the denial of the administrative claim. *Id.* at *1–2.

Finally, the Zappones assert that a mere two-month delay in filing their claims cannot possibly have prejudiced the government. The government, for its part, concedes that the prejudice factor does not weigh in its favor. The absence of prejudice, however, cannot serve as an independent basis for equitably tolling a limitations period, especially where, as here, the plaintiffs fail to demonstrate that any other factor supports tolling. *Graham-Humphreys*, 209 F.3d at 562 n.12; *see also Menominee Indian Tribe*, 136 S. Ct. at 757 n.5.

In sum, the five-factor approach counsels against applying equitable tolling here.

**3. The Supreme Court's Two-Part *Holland* Test.**

When we examine this case through the lens of the two-part *Holland* test—which requires (1) the plaintiff to have pursued his rights diligently, and (2) that some extraordinary circumstance stood in his way to prevent timely filing, 560 U.S. at 649—our conclusion remains the same.

**a. Diligence in Pursuit of Their Rights.**

As discussed, the Zappones could have taken the appropriate steps to notify the IRS of their change in attorney, *see* 26 C.F.R. § 601.505, but they failed to do so. "Ignorance of the legal process alone will not provide the basis for an equitable tolling claim." *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) (citing *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982)). The Zappones therefore fall short of establishing diligent pursuit of their rights.

**b. Extraordinary Circumstances Standing in the Way of Timely Filing.**

As noted, none of the Zappones' attorneys informed their clients of the receipt of the claim-denial notice.  Nor did they notify the IRS of a change in representation before the IRS sent its denial letter.  If they had done so, "the denial letter presumably would have been delivered" to the appropriate party.  *Jackson*, 751 F.3d at 720.  Again, "a garden variety claim" involving an attorney's "excusable neglect" does not amount to an extraordinary circumstance warranting equitable tolling.  *Holland*, 560 U.S. at 651–52.

For these reasons, we uphold the district court's determination that the Zappones untimely filed their state-law claims and that their circumstances do not merit equitable tolling.

**B.**

We turn next to the Zappones' constitutional claims against the individual IRS agents for violating their due process and Fourth Amendment rights.  After noting that these *Bivens* claims are "governed by the same statute of limitations as [] claim[s] under 42 U.S.C. § 1983," and that "the statute of limitations for [§ 1983 claims] arising in Ohio" is two years, the district court dismissed them as untimely.  It also rejected the Zappones' alternative argument for equitable tolling.  The district court reached the right result on both counts.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized a cause of action against federal officials for certain constitutional violations when no alternative processes exist to protect the plaintiff's interests and no special factors counsel against recognizing the cause of action."  *Zundel v. Holder*, 687 F.3d 271, 279 (6th Cir. 2012) (citations omitted).  *Bivens* claims, like § 1983 claims, ordinarily borrow the personal-injury statute of limitations from the state in which the claim arose.  *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Zundel*, 687 F.3d at 281; *McSurely v. Hutchison*, 823 F.2d 1002, 1004–06 (6th Cir. 1987).

When a state, such as Ohio, has multiple personal-injury statutes with different limitations periods, courts use the statute of limitations applicable to residual or general personal injuries, not that for a particular specific intentional tort.  *See Owens v. Okure*, 488 U.S. 235,

249–50 (1989); *Browning v. Pendleton*, 869 F.2d 989, 990–91 (6th Cir. 1989) (en banc). That means that Ohio Rev. Code § 2305.10, which governs the timeliness of general personal injury claims, applies to *Bivens* claims arising in Ohio. *See Browning*, 869 F.2d at 992. And that statute provides for a two-year limitations period, with the cause of action accruing at the time of injury. Ohio Rev. Code § 2305.10.

No party disputes that the Zappones' *Bivens* claims accrued on the day of the allegedly unlawful search—November 8, 2012. As the district court summarized, "[t]he Zappones were at [OSC]'s office during the search [when] the money [was] placed in the custody of the IRS, and thus knew of their alleged injury that day." Applying Ohio Rev. Code § 2305.10, the Zappones thus had until November 8, 2014, to sue the IRS agents. But they failed to bring their claims until October 14, 2015—over eleven months past the statutory deadline.

Nevertheless, the Zappones advance two arguments in a bid to revive their claims.

*First*, they contend that the district court applied the wrong statute of limitations. They reason that because their claims chiefly arise out of an alleged unlawful appropriation of money, Ohio's four-year statute of limitations governing the tort of conversion should apply, *see* Ohio Rev. Code § 2305.09(B), as it is the "most analogous statute of limitations" with respect to their claims. In support, they rely on *Baker v. Mukasey*, in which a panel of this court stated, with respect to *Bivens* claims, that it "appl[ies] the most analogous statute of limitations from the state where the events giving rise to the claim occurred." 287 F. App'x 422, 424 (6th Cir. 2008).

Notwithstanding this language from *Baker*, binding authority forecloses the Zappones' argument. In *Owens*, the Supreme Court rejected the petitioners' attempts to analogize their § 1983 claims to particular state-law intentional torts and borrow those torts' statutes of limitations. 488 U.S. at 249–50. The Court recognized that such an approach carries "enormous practical disadvantages," including inconsistent application. *Id.* 242–48. And it also reasoned that, "[g]iven that so many claims brought under § 1983 have no precise state-law analog, applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope." *Id.* at 249. The Court thus concluded that "where state law provides multiple statutes of limitations for personal injury actions, courts considering

§ 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249–50.  That same logic applies to locating the appropriate statute of limitations for *Bivens* claims.  *See Hardin*, 490 U.S. at 540; *Zundel*, 687 F.3d at 281; *McSurely*, 823 F.2d at 1004–06. And as noted, Ohio Rev. Code § 2305.10 delineates the residual or general statute of limitations for personal-injury torts.  *See Browning*, 869 F.2d at 992.

*Baker*, an unpublished decision, does not compel a different result.  That panel resolved a prisoner's *Bivens* claims against prison officials without the benefit of briefing from the defendants.  *See* 287 F. App'x at 424.  Although the court voiced a rule seemingly in harmony with the Zappones' position—that a court should apply "the most analogous statute of limitations from the state where the events giving rise to the claim occurred"—it did not then analyze the prisoner's constitutional claims and try to locate the most analogous civil claims in the jurisdiction.  *See id.*  Instead, that statement was merely prefatory to the court's determination that, since the prisoner's claims arose in Kentucky, the court should use Kentucky's one-year time limit applicable to personal-injury claims rather than any other state's longer statute of limitations for personal-injury claims.  *See id.*  *Baker*'s reasoning thus does not stand for the proposition the Zappones would assign to it.  And to the extent that *Baker* suggests a departure from the well-established rule that § 1983 and *Bivens* claims borrow the general or residual statute of limitations for personal injury claims, we reject that reasoning here.

*Second*, the Zappones argue that, even if a two-year statute of limitations governed their claims, the district court should have equitably tolled the period.  In support, they say that they erroneously pursued their claims in the wrong forum, pointing to their filing of the amended claims in the civil-forfeiture action, which alleged that the IRS agents actually seized $3,150,000 from their safe.  *United States v. $1,264,000 in U.S. Currency*, No. 3:13-cv-0095 (N.D. Ohio Apr. 22, 2013).  They reason that their pleadings in the forfeiture action reflect diligent pursuit of their claims.  And their "good faith error," they argue, entitles them to equitable tolling.

The Zappones buttress their argument by citing *Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965).  In that case, the plaintiff sued his employer, a railroad, in Ohio state court, alleging a violation of the Federal Employer's Liability Act (FELA).  *Id.* at 424.  FELA provided for concurrent jurisdiction in state courts and U.S. district courts.  45 U.S.C. § 56.  The

Ohio court had jurisdiction and the plaintiff had properly served the defendant with process. *Burnett*, 380 U.S. at 424–25. But because venue was not proper in the Ohio court and Ohio law barred transfer to another court where venue was proper, the Ohio court dismissed the action. *Id.* at 425. Eight days after the Ohio court's dismissal of his claims, the plaintiff filed an identical suit in federal court, but by this point, his claim was untimely under FELA's three-year statute of limitations. *Id.* The Supreme Court concluded that equitable tolling warranted permitting the plaintiff's claims to proceed because "when process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process, it is enough to commence the action within the federal statute." *Id.* at 426 (quoting *Herb v. Pitcairn*, 325 U.S. 77, 79 (1945)).

*Burnett*'s rationale offers no refuge for the Zappones' untimely claims. The Zappones did not merely assert their entitlement to relief in the wrong forum—they did so in the wrong type of action. As the district court correctly noted, "the Zappones could not have pursued, diligently or otherwise, their *Bivens* claims" in the civil-forfeiture proceeding. A forfeiture action is a suit *in rem* against the *res*, or the seized property, the purpose of which is to determine "ownership and control" over that property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993). In other words, a claim in a civil-forfeiture action is "brought against property, not people." *United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol de Credito Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002). And while the purported owner of the property may intervene in the action, he may not assert counterclaims against the United States. *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 34 (1st Cir. 1991). The Zappones therefore could not have diligently pursued damages against a federal agent in the civil-forfeiture action—they could not, in other words, "start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process." *See Burnett*, 380 U.S. at 426.

Another significant fact distances this case from *Burnett*. In filing their amended claims in the civil-forfeiture proceeding, the Zappones never served process or other notice on the individual IRS agents. The amended claims, filed through the court's ECF system, would have been delivered electronically only to the attorneys who had appeared on behalf of the United

States or on behalf of other claimants. Because the Zappones have shown no proof that they served the amended civil-forfeiture claims on any of the individual defendants named in the present case, process was far from "adequate" to "bring in the parties" subject to their *Bivens* claims. *See id.* at 426.

In a last-ditch effort to salvage their constitutional claims, the Zappones contend that the district court should have left the question of equitable tolling for the jury. Not so. The decision to invoke equitable tolling is a question of law for a court to answer. *Chavez*, 559 F.3d at 494 (citing *Rose v. Dole*, 945 F.2d 1331, 1334 (6th Cir. 1991)). And the district court did so correctly.

**III**.

We AFFIRM.