NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0087n.06

Case No. 23-6052

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

February 13, 2025

KELLY L. STEPHENS, Clerk

| | |
|---|---|
| LAWRENCE ALLEN, ) | |
| ) | |
| Plaintiff-Appellant, ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR |
| v. ) | THE MIDDLE DISTRICT OF |
| ) | TENNESSEE |
| DUSTIN FAIT; TOWN OF SMYRNA, ) | |
| TENNESSEE, ) | OPINION |
| ) | |
| Defendants-Appellees. ) | |

Before: SILER, COLE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** Plaintiff Lawrence Allen appeals from the district court's order dismissing his 42 U.S.C. § 1983 case against Defendants Dustin Fait and Town of Smyrna, Tennessee, for, among other things, allegedly withholding exculpatory evidence. The district court held that because Allen filed his civil case nearly two years after his guilty plea in the underlying criminal case, his lawsuit is barred by Tennessee's one-year statute of limitations. We affirm.

**I.**

Allen's complaint sets forth the following facts, which we assume are true at this stage. *See Wershe v. City of Detroit*, 112 F.4th 357, 362 (6th Cir. 2024).

On June 18, 2015, Allen was arrested for and charged with domestic assault and aggravated rape based on allegations made by his wife, Kimberly Allen. Four days later, Kimberly emailed Fait, a Smyrna detective, and recanted the rape allegation. She revealed that she had a sexual encounter with a different person that night, not Allen.

The State waited over two years to disclose the email to Allen, finally turning it over with its pretrial discovery in December 2017—well after Allen's March 18, 2016, preliminary hearing. Fait and Kimberly had testified at the hearing, and Allen's attorneys cross-examined them, but neither Fait nor Kimberly mentioned Kimberly's recantation.

Allen moved to exclude Kimberly's preliminary hearing testimony based on Tennessee Rule of Evidence 804 and the Confrontation Clauses of the United States Constitution and Tennessee Constitution. The trial court denied the motion, holding that Kimberly, who had died, was unavailable and that Allen had an opportunity and similar motive to cross-examine her at the preliminary hearing. At trial, the State offered Kimberly's preliminary hearing testimony and the email as evidence. The jury convicted Allen of domestic assault and aggravated rape, and the trial court sentenced him to twenty years in prison.

Allen appealed, and in 2020, the Tennessee Court of Criminal Appeals reversed his convictions and remanded the case for a new trial. The court held that the State's failure to disclose the "obviously exculpatory" email before Allen's preliminary hearing, combined with Kimberly's death before trial, violated *Brady v. Maryland*, 373 U.S. 83 (1963). *State v. Allen*, No. M2019-00667-CCA-R3-CD, 2020 WL 7252538, at *17 (Tenn. Crim. App. Dec. 10, 2020).

The State did not retry Allen. Instead, in 2021, Allen pleaded guilty to a lesser charge of aggravated assault, and the trial court dismissed the domestic assault and aggravated rape charges *nolle prosequi*.[1] On February 8, 2022, the Rutherford County Circuit Court expunged Allen's domestic assault and aggravated rape records.

---

[1] As the district court noted, these facts are not in Allen's complaint but in a docket sheet that Fait and Smyrna attached to their motion to dismiss. The district court relied on the document because it is a public record. Allen does not challenge that decision.

On February 7, 2023, Allen sued Fait and Smyrna, asserting claims under 42 U.S.C. § 1983 for *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972), violations; malicious prosecution; and municipal liability. Fait and Smyrna moved to dismiss the complaint, arguing that Tennessee's one-year statute of limitations barred Allen's claims. The district court granted the motion. It held that the one-year statute of limitations began to run on April 8, 2021, when Allen pleaded guilty to aggravated assault and the trial court dismissed his other charges. Allen timely appealed.

We review de novo a district court's dismissal of a complaint as barred by a statute of limitations. *J. Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019). Because § 1983 does not contain a statute of limitations, we look to the state where the events happened and apply its personal injury statute of limitations. *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam). Tennessee's is one year. *See* Tenn. Code § 28-3-104(a)(3).

While state law provides the statute of limitations, "federal law determines when a § 1983 claim *accrues* to trigger the running of this state statute of limitations." *Reguli*, 109 F.4th at 879. "That time is presumptively when the plaintiff has a complete and present cause of action[,]" which depends on the allegedly infringed constitutional right and its most analogous common-law tort. *McDonough v. Smith*, 588 U.S. 109, 115–20 (2019) (cleaned up). The parties agree that Allen's claims are most similar to common-law malicious prosecution. The statute of limitations for such claims begins to run when "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), or when the criminal case ends in the plaintiff's favor, *McDonough*, 588 U.S. at 119–20.

## II.

Allen challenges the district court's determination that the case ended in his favor on April 8, 2021, when he pleaded guilty to aggravated assault and the district court dismissed the domestic assault and aggravated rape charges.  He argues that his claims were timely because they either accrued on April 4, 2022, when the Supreme Court decided *Thompson v. Clark*, 596 U.S. 36 (2022), which abrogated Sixth Circuit precedent that he believes would have foreclosed his claim; or on February 8, 2022, when his records were expunged.  Alternatively, Allen asks that we apply equitable tolling.

In *Thompson v. Clark*, the Supreme Court held that a plaintiff bringing a § 1983 malicious prosecution claim need not prove that "the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction."  596 U.S. 36, 49 (2022).  *Thompson* abrogated our decision in *Jones v. Clark County*, 959 F.3d 748, 764–65 (6th Cir. 2020), which applied the indication-of-innocence rule to hold that a plaintiff whose charges were voluntarily dismissed by prosecutors could establish favorable termination because the dismissal indicated he may be innocent.  *Jones* adopted the indication-of-innocence rule from *Ohnemus v. Thompson*, 594 F. App'x 864, 867–68 (6th Cir. 2014), an unpublished opinion in which we held that a "dismissal must be one-sided and not the result of any settlement or compromise[,]" so the accused's agreement to pay restitution in exchange for the dismissal of his theft charge was "a compromise on the merits" and "not the unilateral decision of the prosecutor to drop charges[.]"

Allen claims that *Ohnemus* and subsequently *Jones* would have defeated his claims, so he did not have a complete cause of action until April 4, 2022, when the Supreme Court decided

*Thompson*. Thus, he argues his statute of limitations expired one year later, on April 4, 2023. We are not persuaded.

Assuming for the purposes of Allen's argument that *Ohnemus* and *Jones* would have foreclosed his claims, Allen still had a nonfrivolous argument available to him. A month before Allen pleaded guilty, the Supreme Court granted certiorari in *Thompson* to address the indication-of-innocence rule—the rule Allen believed would defeat his claims—signaling that the law may change. *Thompson v. Clark*, 141 S. Ct. 1682 (2021); Petition for Writ of Certiorari, *Thompson*, 596 U.S. 36 (No. 20-659); *Towne v. Donnelly*, 44 F.4th 666, 676 (7th Cir. 2022) (recognizing that "[t]he granting of certiorari serve[s] to alert litigants of a potential change in the law"). The existence of potentially unfavorable caselaw does not excuse Allen's untimeliness; he should have filed his claims within the limitations period and presented his best arguments. *Cf. Ortiz-Santiago v. Barr*, 924 F.3d 956, 964 (7th Cir. 2019) (declining to relieve a party's forfeiture following a favorable change in the law because "that does not mean that a party may always stand silent if a potential problem exists. . . . [T]here were signs that a meritorious argument could be raised.").

## A.

Allen next argues that his statute of limitations began to run when his records were expunged on February 8, 2022, because he continued to suffer collateral consequences of his convictions until then, such as the inability to vote, serve on a jury, or run for public office. Allen explains that the date a § 1983 claim accrues is not necessarily the same day the statute of limitations begins to run; sometimes the limitations period is deferred. Allen is right about some § 1983 claims, like common law false arrest claims. *See Wallace v. Kato*, 549 U.S. 384, 388, 397 (2007). But he is wrong about his § 1983 claim. The statute of limitations for claims most similar

to common law malicious prosecution begins to run on the accrual date. *McDonough*, 588 U.S. at 119–20.

The continuing violation doctrine, which may defer a statute of limitations, is likewise inapplicable. "A continuing violation in a § 1983 action occurs when there are continued unlawful acts, not by continued ill effects from the original violation." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 308 (6th Cir. 2010). Allen does not identify continued unlawful acts; he only points to the collateral consequences from the *Brady* and *Giglio* violations and subsequent wrongful conviction, which do not constitute continuing violations. *See McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) ("[T]he false arrest, malicious prosecution, and wrongful suppression of exculpatory evidence constitute discrete wrongs (i.e., separate torts with separate elements), and they will not be viewed by this court as a continuing violation.").

*Heck* does not change the limitations period either. *Heck* prohibits plaintiffs from bringing § 1983 claims for an "allegedly unconstitutional conviction or imprisonment" if success on the claim would "necessarily imply the invalidity of [the] conviction or sentence[.]" 512 U.S. at 486–87. If the plaintiff can prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," the claim is permissible under *Heck*. *Id.* In other words, *Heck* defers claim accrual, and by extension, the start of the statute of limitations, to avoid collateral attacks on state court judgments, parallel litigation, and conflicting judgments. *See McDonough*, 588 U.S. at 114, 117–18. For the same reason, § 1983 plaintiffs who were not convicted in their criminal cases cannot challenge the validity of their criminal proceedings until they have been resolved in their favor. *Id.* at 117–20.

Allen claims that, until his convictions were expunged, collateral consequences of his convictions meant his criminal proceedings were still ongoing and there was still a risk of parallel litigation. We disagree. Allen's convictions were reversed on December 10, 2020, so there was no state court judgment that Allen could have collaterally attacked by bringing his claims, even before expungement. And he pleaded guilty on April 8, 2021, so there was no ongoing criminal proceeding to risk parallel litigation.

Allen directs us to *Carr v. Louisville-Jefferson County*, 37 F.4th 389, 395 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 640 (2023), but it does not strengthen his point. There, we held that although *Heck* did not mention that a pardon can invalidate a conviction, it was sufficient because it "removes all legal consequences of the individual's conviction, avoiding the concern of parallel litigation with an outstanding criminal proceeding." *Id.* at 394. Allen insists that only his expungement removed *Heck*'s parallel litigation concerns because it freed him of all his convictions' legal consequences. But just because removing all consequences from a conviction is sufficient to avoid the concern of parallel litigation, that does not mean it is necessary to do so. Allen describes the expungement process as a state challenge to his convictions and criminal proceedings that he had to exhaust before bringing his claims, but exhaustion is not a requirement for § 1983 suits. *Heck*, 512 U.S. at 489. What matters is whether the claims present a collateral attack on state court judgments or ongoing criminal proceedings. *See id.*; *McDonough*, 588 U.S. at 118. Allen fails to explain why his § 1983 claims would have risked parallel litigation on convictions that had been reversed and charges that had been dismissed. *See Carr*, 37 F.4th at 395 (explaining that elimination of the collateral consequences or the record of a conviction is unnecessary so long as the conviction has been invalidated and not in danger of parallel litigation or a collateral attack).

**B.**

We therefore affirm the district court's holding that Allen's statute of limitations began to run on April 8, 2021, and turn to Allen's request that we apply equitable tolling. We decline.

Equitable tolling is an extraordinary remedy that federal courts apply "only sparingly" and not to a "garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). At the motion to dismiss stage, we review the district court's equitable tolling decision de novo, considering these five factors: "whether the plaintiff (1) lacked notice of the filing requirement, (2) lacked constructive knowledge of the filing requirement, (3) diligently pursued his rights, (4) would prejudice the defendant in pursuing the claim, and (5) reasonably ignored the filing requirement." *Wershe*, 112 F.4th at 365–66 (citation omitted).

Allen had notice of the filing requirement, and it was unreasonable for him to ignore it. By statute, Tennessee has a one-year limitations period for § 1983 claims, and despite potentially unfavorable circuit precedent, the grant of certiorari in *Thompson* gave Allen notice of a potential change in the law and thus a nonfrivolous argument. This weighs against equitable tolling because it makes Allen's failure to file by the deadline less excusable. *See Griffin v. Rogers*, 399 F.3d 626, 636 (6th Cir. 2005) ("Indeed, '[e]quitable tolling focuses primarily on the *plaintiff's* excusable ignorance of the limitations period.'") (quoting *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir.1998)).

Additionally, Allen's lack of diligence weighs against him. He should have "diligently pursued the instant claims during the entire period over which he seeks equitable tolling[,]" *see Wershe*, 112 F.4th at 367–68 (collecting cases), but he waited nearly two years after his guilty plea and around a year after *Thompson* and his expungement to file suit. His explanation that he spent time finding an attorney and seeking expungement fails to justify the delay.

8

Finally, without any other factor weighing in his favor, the absence of prejudice to Fait and Smyrna does not justify equitable tolling. *See Zappone v. United States*, 870 F.3d 551, 558 (6th Cir. 2017) ("The absence of prejudice, however, cannot serve as an independent basis for equitably tolling a limitations period, especially where, as here, the plaintiffs fail to demonstrate that any other factor supports tolling.").

**III.**

For the foregoing reasons, we affirm the district court's dismissal of Allen's complaint as time-barred and its refusal to apply equitable tolling.