NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0190n.06

Case No. 25-3458

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 28, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| CHARLES CRENSHAW, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| WARDEN, LORAIN CORRECTIONAL INSTITUTION; WARDEN, BELMONT CORRECTIONAL INSTITUTION; WARDEN, FEDERAL CORRECTIONAL INSTITUTION PETERSBURG LOW, | ) | |
| Defendants-Appellees. | ) | O P I N I O N |

Before: READLER, DAVIS, and BLOOMEKATZ, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff Charles Crenshaw's thirty-year prison sentence was reduced in May 2019, but he was not released from federal prison until over a year later, when he was transferred to state custody for a parole violation. Claiming that his continued detention after his sentence reduction violated his constitutional rights as well as state and federal tort law, Crenshaw sued the wardens of three prisons where he was housed. The district court dismissed Crenshaw's complaint for failure to state a claim, and he appeals the dismissal. We affirm.

I.

In 1995, while on parole for a 1969 murder conviction, Charles Crenshaw was arrested in the Northern District of Ohio on federal drug and firearm charges. In September 1996, a jury found him guilty of possession with intent to distribute cocaine and possession of a firearm by a

convicted felon. Crenshaw was sentenced to 360 months (30 years) in prison. Roughly twenty-three years into his sentence, Crenshaw successfully moved to reduce his term of imprisonment under the First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). And, on May 7, 2019, the district court lowered his sentence to 281 months.

In the meantime, the state of Ohio filed with federal authorities a detainer on Crenshaw for a parole violation. Crenshaw remained in federal custody until June 30, 2020, when he was transferred to state custody to answer for his parole violation. Asserting that federal authorities should have released him from custody in May 2019 when the district court ordered his sentence reduced, Crenshaw filed an administrative claim for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. The Federal Bureau of Prisons ("BOP") denied the April 21, 2021, claim and advised him of his right to sue on September 29, 2021. Specifically, the denial notice advised Crenshaw that he could "file suit in the appropriate United States District Court not later than six (6) months after the date of mailing of this notification." (Right-to-Sue Ltr., R. 23-1, PageID 140).

Roughly two and a half years later, on March 15, 2024, Crenshaw filed this action against the wardens of Lorain and Belmont Correctional Institutions ("State Defendants") and the warden of Federal Correctional Institution ("FCI") Petersburg Low. He brought claims for (1) wrongful detention in violation of the Eighth and Fourteenth Amendment (Count I); (2) deprivation of due process and continued detention without probable cause in violation of the Fourth and Fourteenth Amendment (Count II); (3) intentional infliction of emotional distress ("IIED") under Ohio law (Count III); (4) deprivation of good-time credits in violation of 18 U.S.C. § 3624—Release of a Prisoner (Count IV); and (5) a Fifth Amendment due process violation (Count V).

Defendants moved to dismiss the complaint. The district court construed Crenshaw's claims as violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, and state and federal tort claims for wrongful imprisonment. It dismissed the complaint in full without addressing Crenshaw's IIED and 18 U.S.C. § 3624 claims. In this appeal, Crenshaw appears to adopt the district court's framing of his claims and makes no reference to his IIED and 18 U.S.C. § 3624 claims. Thus, those claims are forfeited, *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019), and we review only the district court's dismissal of Crenshaw's § 1983 and tort claims.

## II.

We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Bickerstaff v. Lucarelli*, 830 F.3d 388, 395–96 (6th Cir. 2016). In doing so, we construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded factual allegations, and draw all reasonable inferences in the plaintiff's favor. *Id.* at 396. "To survive a motion to dismiss, a plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Id.* (citation modified). "[C]onclusory legal allegations," however, will not suffice to establish a plausible claim for relief. *Id.* (citation omitted). We also apply de novo review to dismissals based on untimeliness. *See Wershe v. City of Detroit*, 112 F.4th 357, 365 (6th Cir. 2024).

## III.

*Bivens Claim.* First, Crenshaw argues that the district court erred in dismissing his complaint against the FCI Petersburg Low warden for failure to state a claim. As an initial matter, although Crenshaw's complaint fashioned all of his constitutional claims as 42 U.S.C. § 1983 claims, Crenshaw cannot maintain a claim for money damages for constitutional violations against

federal officials except in the narrow circumstances recognized by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and its progeny. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022). Therefore, the district court construed Crenshaw's constitutional claims against the FCI Petersburg Low warden—the sole federal defendant—as *Bivens* claims. The district court also properly concluded that the amended complaint fails on this front.

To state a *Bivens* claim, Crenshaw must allege with particularity facts to demonstrate what the FCI Petersburg Low warden did to violate his constitutional rights; "categorical" references to "Defendants" do not suffice. *Marcilis v. Township of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012). Here, the amended complaint identifies the FCI Petersburg Low warden only once for the purpose of naming him as a party. The amended complaint otherwise "makes only categorical references to 'Defendants'" without specifying what actions the FCI Petersburg Low warden took to deprive Crenshaw of his constitutional rights. *Id.* at 596. Crenshaw has thus failed to state a *Bivens* claim. In any event, his *Bivens* claims also fail because we have not recognized a right of action for the constitutional violations Crenshaw alleges.

The Supreme Court has recognized an implied private right of action against federal officials for constitutional violations on only three occasions. First, in *Bivens*, the Court held that the plaintiff could recover for a federal agent's unconstitutional conduct under the Fourth Amendment where the federal agent conducted a warrantless and unlawful arrest and search of the plaintiff in his home. 403 U.S. at 389–90. Second, in *Davis v. Passman*, the Court held that an implied cause of action for damages existed under the Fifth Amendment where a United States Congressman terminated the plaintiff's employment based on sex discrimination. 442 U.S. 228, 230–234 (1979). Finally, in *Carlson v. Green*, the Court held that the plaintiff could bring an

Eighth Amendment claim against federal prison officials for the death and personal injuries of her son arising from the officials' unconstitutional conduct. 446 U.S. 14, 16–18 (1980). Since these decisions, the Supreme Court has repeatedly declined to extend *Bivens* beyond these recognized contexts. *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 630 (6th Cir. 2025) (collecting cases).

To determine whether an implied cause of action under *Bivens* exists, we first "ask whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* at 631 (citation omitted). In doing so, some factors we consider include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). A new *Bivens* context exists if "it differs in virtually any way from the *Bivens* trilogy." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021). If we find that the case presents a new *Bivens* context, we ask "whether any special factors counsel against extending a cause of action." *Id.* For instance, we "may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert v. Boule*, 596 U.S. 482, 493 (2022) (citation modified). This two-part test is "exacting," and we "will almost always [] never" recognize a new *Bivens* action. *Elhady*, 18 F.4th at 883.

Applying that exacting standard here, Crenshaw's claims fail. First, Crenshaw raises an entirely new *Bivens* context. Indeed, the Supreme Court has never recognized a *Bivens* action under the Fourteenth Amendment, which Crenshaw raises here. And, while the Fourth, Fifth, and Eighth Amendments have served as launching points for successful *Bivens* claims, none of the

cases in which such a claim has survived concerned the circumstances at issue here: a defendant's prolonged imprisonment pending release to state custody for a parole violation. As such, this case meaningfully differs from the other recognized *Bivens* claims. This fact counsels against the existence of a claim.

Moreover, Crenshaw's claim also fails the second prong of our inquiry inasmuch as the FTCA provides an alternative remedy for his claims against the sole federal defendant. *See Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012) (indicating that the FTCA encompasses the tort of false imprisonment). Having failed to satisfy either prong of the *Bivens* inquiry, Crenshaw has not plausibly established an implied right of action, and the district court properly dismissed Crenshaw's *Bivens* claims.

*FTCA Claim.* Further, although the FTCA offered an alternative remedy, Crenshaw missed the deadline for bringing such a claim. Crenshaw argues that none of his claims are time-barred. Yet, he discusses only the timeliness of his constitutional claims. The district court, however, dismissed as time-barred Crenshaw's tort claim against the FCI Petersburg Low warden, not his constitutional claims. Therefore, we focus our analysis on the timeliness of his FTCA claim.

The FTCA allows a plaintiff to bring a claim "against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *Zappone v. United States*, 870 F.3d 551, 555 (6th Cir. 2017). Under the FTCA, Crenshaw was required to satisfy "two limitations periods." *Zappone*, 870 F.3d at 555. First, he needed to present an administrative claim to the appropriate federal agency within two years of the claim's accrual. *Id.* Second, he had to file suit within six months of the agency's denial of his administrative claim. *Id.* Crenshaw contends that the accrual

date for his claim was later than the district court recognized. But that argument gets him nowhere. For he does not dispute that his administrative claim was denied on September 29, 2021. Therefore, regardless of when the claim accrued, he had until March 29, 2022, to file his FTCA claim. He did not do so, however, until March 15, 2024—almost two years late. Accordingly, his FTCA claim against the FCI Petersburg Low warden is time-barred.

Undeterred by the significant lapse of time, Crenshaw argues that he is entitled to equitable tolling. The Supreme Court has held that the filing deadlines in the FTCA are subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 405 (2015). Equitable tolling applies "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Zappone*, 870 F.3d at 556 (citation omitted). But we will not equitably toll the statute of limitations in circumstances involving "garden variety . . . excusable neglect." *Id.* (citation omitted). Crenshaw bears the burden of establishing that equitable tolling should apply. *Id.* We consider the following factors:

> whether the plaintiff (1) lacked notice of the filing requirement, (2) lacked constructive knowledge of the filing requirement, (3) diligently pursued his rights, (4) would prejudice the defendant in pursuing the claim, and (5) reasonably ignored the filing requirement.

*Wershe*, 112 F.4th at 366. These factors are not exhaustive, and they do not all invariably apply. *See id.* We review de novo the district court's denial of equitable tolling. *Id.* at 365–66.

Crenshaw does not meaningfully develop his argument. In any event, the aforementioned factors counsel against equitable tolling. First, it appears that Crenshaw had actual notice of the filing requirement since the right-to-sue letter sent to his attorney informed him of the six-month deadline. Failing that, Crenshaw had, at least, constructive knowledge of the filing requirement because (1) his attorney should have known of the filing deadline, and (2) the FTCA, a publicly available statute, "contains an express statute of limitations provision, which plainly provides

notice of the Act's limitations period." *Id.* at 367. As such, it was not reasonable for Crenshaw to ignore the filing requirement. Additionally, Crenshaw did not diligently pursue his rights, as he waited nearly two and a half years after the denial of his administrative claim to file suit. The FCI Petersburg Low warden claims that he would be prejudiced by the tolling of the limitations period because "witnesses, memories, and documents are less accessible than they would have been had Crenshaw filed his claim within the FTCA limitations period." (FCI Petersburg Low Br., ECF 26, 11). Crenshaw does not appear to challenge this. But regardless, this factor is not dispositive, as "[t]he absence of prejudice . . . cannot serve as an independent basis for equitably tolling . . . where, as here, [Crenshaw] fail[s] to demonstrate that any other factor supports tolling." *Zappone*, 870 F.3d at 558. Accordingly, we affirm the district court's dismissal of Crenshaw's FTCA claim as untimely.

IV.

Finally, Crenshaw argues that the district court erred in dismissing his complaint against the State Defendants. To state a § 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[] and must show that the alleged deprivation was committed by a person acting under color of state law." *Hester v. Chester County*, 162 F.4th 780, 784 (6th Cir. 2025) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Here, Crenshaw failed to plausibly allege facts to show that the State Defendants committed any cognizable constitutional violations. The purported constitutional violations of which Crenshaw complains all center on his prolonged detention in federal custody following the reduction to his federal sentence. He does not allege what specific actions from the State Defendants, wardens of *state* prisons, contributed to his extended detention in *federal* custody. Crenshaw's grouping of all defendants in his complaint is insufficient to state a claim

against the State Defendants, as we have "consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyward v. Cooper*, 88 F.4th 648, 661 (6th Cir. 2023) (citation omitted).  And although Crenshaw does allege that upon release from federal custody, he was held in state custody, he does not allege that his detention in state custody was unlawful or in violation of his constitutional rights.  Therefore, Crenshaw failed to state a claim against the State Defendants.

V.

For the reasons stated, we affirm.